# Exhibit A



# CHIPS® Rules and Administrative Procedures
# Effective March 1, 2024

Copyright © 2024 by
The Clearing House Payments Company L.L.C.
All rights reserved.

initial opening position requirement to the prefunded balance account; and

(B) will not release any payment message to a Participant as a Receiving Participant on any day until the Participant has transferred, directly or indirectly, funds in the amount of its initial opening position requirement to the prefunded balance account, and, as a Sending Participant, has begun to deliver payment messages to the Clearing House.

(d) OBLIGATION OF SENDING PARTICIPANT TO PAY RECEIVING PARTICIPANT.

A Sending Participant does not become obligated to pay the amount of a payment message to the Receiving Participant until CHIPS has released the payment message to the Receiving Participant. Release of a payment message by CHIPS to the Receiving Participant creates an obligation of the Sending Participant to pay the Receiving Participant the amount of the payment message, and, simultaneously when the payment message is released, this obligation is netted to the extent provided for in Rule 13 and settled in accordance with Rule 13. The completion of settlement of any payment message in accordance with Rule 13 constitutes a final settlement of that payment message and a final discharge and payment of the Sending Participant's obligation to pay the amount of that payment message to the Receiving Participant.

3. **CHOICE OF LAW.**

(a) The rights and obligations of a Participant as Sending or Receiving Participant to a Payment Message shall be governed by these Rules and by the laws of the State of New York, including Article 4-A of the New York Uniform Commercial Code, regardless of whether the payment message is part of a funds transfer that is a remittance transfer governed by section 919 of the Electronic Fund Transfer Act, 15 U.S.C. § 1693o-1.

(b) The rights and obligations of all other parties to a funds transfer of which a Payment Message is a part, shall be governed, to the greatest extent permitted by law, by these Rules and the law of the State of New York, including Article 4-A of the New York Uniform Commercial Code. In the case of a funds transfer that is a remittance transfer that is governed by section 919 of the Electronic Fund Transfer Act, 15 U.S.C. § 1693o-1, or a successor provision as amended from time to time, shall be governed by New York law, including Article 4A of the Uniform Commercial Code, except in the case of an inconsistency between New York law and the Electronic Fund Transfer Act, in which case the Electronic Fund Transfer Act shall govern.

(c) For purposes of this rule, a "funds transfer" means the series of transactions, beginning with the originator's payment order, made for the purpose of making

payment to the beneficiary of the order and includes any payment order issued by the originator's bank or an intermediary bank intended to carry out the originator's payment order.

4. **COMPENSATION.**

Settlement of claims for compensation between Participants arising out of Payment Messages shall be governed by the Rules on Interbank Compensation established by the Clearing House.

5. **AVAILABLE OFFICER.**

From the time the System opens until final prefunding, netting, and release have been completed, an officer authorized to act on behalf of the Participant with respect to its obligations and operations on CHIPS shall be available for immediate contact by the Clearing House. A Participant may designate one or more officers to be available. At least one designated officer must have the authority to make binding commitments for the Participant with respect to the unreleased Payment Messages it has delivered to the System and to ensure that the Participant pays its opening position requirement and its closing position requirement in a timely fashion. Each Participant must provide the Clearing House with the name, address, and business and emergency telephone numbers of each designated officer and of any alternate for such officer, specifying the period of time when the officer and alternate have each been assigned to be available. At least one designated officer shall both be present and available in the United States of America and be able to provide prompt access to the other designated officers who have been assigned.

6. **CONNECTION TO THE SYSTEM.**
    (a) CONNECTION.

    A Participant's connection to the System must consist of an electronic connection of a type approved by the Chief Executive Officer. The circuit and router that TCH provides to a Participant in order to connect to the System must terminate at a location of the Participant in the United States of America, including its territories[1].

---

[1] The inclusion of U.S. territories for purposes of a Participant's connection to the system under Rule 6 and the location of its data centers under Rule 7 is without prejudice to the Clearing House's ability to require that a Participant's office in the United States under Rule 19(a) be in the United States and not its territories.

5

in accordance with the message formats adopted pursuant to Rule 8 and with the procedures provided in the CHIPS Administrative Procedures. If a Receiving Participant receives a fully qualified payment message or a partially qualified payment message, the Receiving Participant is authorized to credit an account of or pay the party in accordance with the CHIPS Administrative Procedures.

(c) INDEMNITY UPON AUTHORIZED PAYMENT.
Upon crediting an account or paying a party as authorized by this Rule 10 and the CHIPS Administrative Procedures, a Receiving Participant shall be indemnified and held harmless by the Sending Participant from and against any and all claims, demands, losses, liabilities, or expenses (including all reasonable legal fees, costs, and disbursements of counsel) arising from any claim that (i) the party paid or credited was not the party intended to be paid or credited by the Sending Participant or any prior party issuing transfer instructions for the funds transfer or (ii) the party paid or credited was not the party that was identified by name, address, account number, or any other identification information in any other portion of the payment message. Notwithstanding the foregoing, the Sending Participant shall not be liable for consequential damages unless such damages would be imposed on the Sending Participant in the absence of this Rule 10 (c).

11. **MONTHLY ASSESSMENTS AND CHARGES.**
Each Participant shall pay a monthly assessment to be based on the number of computer messages sent or received by that Participant during the preceding month, subject to a minimum assessment established from time to time by the Clearing House. The types of computer messages, including payment messages and administrative messages, for which charges are to be assessed, the amount of the charge for each message or for messages in excess of an indicated number, and the amount of the minimum assessment shall be as established by the Clearing House from time to time. In addition, each Participant, on a monthly basis, shall reimburse the Clearing House for expenses incurred by the Clearing House to provide telecommunication equipment and services to the Participant, and shall pay the Clearing House for the use of the Clearing House computer facilities for testing at an hourly rate to be established by the Clearing House from time to time. The Clearing House may also charge a fee for reporting services provided to a Participant pursuant to Rule 21.

12. **PREFUNDED BALANCE ACCOUNT AND CURRENT POSITIONS.**
(a) PREFUNDED BALANCE ACCOUNT.
(1) Each Funding Participant must submit, in a form acceptable to the Chief Executive Officer, a letter, pursuant to which it becomes a party to the CHIPS Prefunded Balance Account Agreement under which the

CHIPS prefunded balance account is established at the Federal Reserve Bank of New York ("FRBNY").

(2) A Participant may, and if it is not eligible to open its own account at a Federal Reserve Bank must, designate as its Funding Participant another Participant that is eligible to open an account at a Federal Reserve Bank.

(A) A Participant designated as Funding Participant must acknowledge the designation and agree in writing to act as Funding Participant pursuant to these Rules.

(B) Between the time that Participants may begin to transfer funds in the amount of their opening position requirements to the prefunded balance account pursuant to Rule 12(b)(1)(B) and the time that the Clearing House has completed the transfer of the final positions pursuant to Rule 13(c)(3)(A)(ii) or (B)(iii), no Funding Participant may cease acting as Funding Participant for any Participant for which it has been designated Funding Participant, and no Participant may, without the permission of the Chief Executive Officer, revoke the authority of its Funding Participant to act as its Funding Participant.

(C) A Non-Funding Participant and its Funding Participant must have appropriate communication and financial arrangements in place to enable prompt funding of the Participant's opening position and closing position requirements each day.

(D) In the event the CEO directs under Rule 17(d) that funding and payout activities will be conducted through the National Settlement Service, a Funding Participant that provides funding for a Non-Funding Participant will also serve as Settler under Operating Circular 12 for the Non-Funding Participant for each of the National Settlement Service files the Clearing House submits to carry out funding and payout during the emergency. Alternatively, a Participant whose funding is provided by another Participant during normal CHIPS operations may choose to fund for itself under circumstances in which the National Settlement Service will be used for funding and payout activities by becoming a party to the CHIPS Prefunded Balance Account, as described in subsection (a)(1) of this Rule.

(3) FRBNY shall hold all funds deposited in the CHIPS prefunded balance account for the joint benefit of all the Funding Participants and payable exclusively in accordance with the instructions of the Clearing House as agent on behalf of all Funding Participants.

(4) Pursuant to the CHIPS Prefunded Account Agreement, records in the System are not records of FRBNY, and FRBNY will not take

any action during the day to adjust its records in connection with payment messages released by CHIPS.

(5) No Participant shall have a separate, individual claim against FRBNY at any time for any balance or any part of the balance in the prefunded balance account, and FRBNY shall have no obligation to pay any amount except any amount then in the prefunded balance account and except in accordance with the instructions of the Clearing House as agent on behalf of all Funding Participants under the CHIPS Prefunded Balance Account Agreement.

(b) PRIMARY PREFUNDING.

(1) OPENING PRIMARY POSITION.

(A) At intervals determined by the Chief Executive Officer, but no less frequently than once each month, the Clearing House will calculate for each Participant its "opening position" in accordance with a formula that is reasonably designed to facilitate the release methodology described in Rule 13(a). The Clearing House shall have exclusive discretion in the design and operation of this formula, and no Participant shall have any claim against the Clearing House based on the design or operation of the formula. A Participant may request and the Clearing House in its sole discretion may agree that the Participant's opening position will be set at a predetermined amount that is higher than the amounts previously calculated by the formula ("predetermined opening position"). The Clearing House shall transmit to each Participant a report showing the opening position as calculated by the formula and the period during which the opening position will be effective ("opening position effective period"). If a Participant has a predetermined opening position that is lower than the opening position shown in the report, the opening position shown in the report shall be the Participant's opening position for the opening position effective period.

(B) Each day, each Participant must arrange to have funds in the amount of its opening position for either the current or immediately preceding opening position effective period transferred finally and irrevocably to the prefunded balance account. These funds transfers may be sent directly by the Participant itself or indirectly through another financial institution that has an account at a Federal Reserve Bank. These transfers must be completed by the deadlines established in Administrative Procedure No. 12.

(C) If a Participant transfers to the prefunded balance account funds in excess of its opening position for the current

14

opening position effective period, the Clearing House will promptly return to the Participant (or the financial institution that sent the funds transfer to the prefunded balance account on the Participant's behalf) an amount sufficient to reduce the Participant's opening primary position to the opening position for the current opening position effective period.  Any amount so returned will not be included in the calculation of the Participant's opening primary position as defined in Rule 12(b)(1)(D) or be used in the calculation of the maximum current primary position as defined in Rule 12(e)(1).

(D) Upon receipt of advices from FRBNY, the Clearing House will make a record in the System of the amount that each Participant has transferred, directly or indirectly, to the prefunded balance account (a Participant's "opening primary position").

(2) CURRENT PRIMARY POSITION.  Following the recording of a Participant's opening primary position and continuously throughout the day, the Clearing House will record entries on the System to adjust a Participant's opening primary position to reflect all decreases and increases in a Participant's opening primary position that are recorded through the operation of Rule 13.  The intraday record of each Participant's opening primary position, as adjusted to reflect all decreases and increases recorded through the operation of Rule 13(b) and Rule 13(c), is referred to herein as the Participant's "current primary position."

(c) SUPPLEMENTAL PREFUNDING.

(1) INITIAL SUPPLEMENTAL POSITION.  At any time following the transfer of its opening position requirement but before the System has closed for the delivery of payment messages, a Participant may directly or indirectly transfer additional funds to the prefunded balance account (such transfer shall be hereafter referred to as the Participant's "supplemental transfer").  Upon receipt of an advice of credit from FRBNY, the Clearing House will make a record in the System of the supplemental transfer as the Participant's "initial supplemental position."  If a Participant has not made a supplemental transfer to the CHIPS prefunded balance account but receives one or more payment messages settled in whole or in part by a reduction in the Sending Participant's initial or current supplemental position, the Clearing House will record the corresponding increase in the Receiving Participant's supplemental position resulting from the settlement of the first such payment message as the Receiving Participant's initial supplemental position.

(2) CURRENT SUPPLEMENTAL POSITION.  Following the recording of a Participant's initial supplemental position and continuously

15

throughout the day, the Clearing House will record entries in the System to adjust the Participant's initial supplemental position to reflect all increases and decreases in its initial supplemental position that are recorded through the operation of Rule 13, through the receipt of additional supplemental transfers to the prefunded balance account by or on behalf of the Participant, or through a withdrawal in accordance with Rule 12(f)(1). The intraday record of each Participant's initial supplemental position, as adjusted to reflect all increases and decreases referred to in this paragraph is referred to herein as the Participant's "current supplemental position."

  (3) RESERVED SUPPLEMENTAL POSITION. A Participant may, by using a format prescribed under Rule 8, designate at any time during CHIPS operating hours some portion or all of the current supplemental position attributable to it that is equal to the sum of all supplemental transfers it has made under Rule 12(c)(1) less the amount of any withdrawals in accordance with Rule 12(f)(1)(A) ("reserve-eligible supplemental position") as its reserved supplemental position to be used exclusively for the settlement of the Participant's payment messages that have been designated as priority payment messages under Rule 2(b). Alternatively, a Participant may, using procedures established by the Clearing House, elect that its reserve-eligible supplemental position be automatically and continuously reserved in an amount equal to the Participant's unreleased payment messages that have been designated as urgent under Rule 2(b) or, if such supplemental position is less than the amount of the Participant's unreleased, urgent payment messages, then such supplemental position be entirely reserved. Such reserved supplemental position shall be used exclusively for the settlement of the Participant's urgent payment messages.

(d) COMBINED AND FINAL POSITIONS.
  (1) The sum of each Participant's current primary position and its current supplemental position is referred to in these rules as its "combined position."
  (2) Each Participant's combined position as adjusted to reflect all decreases and increases recorded through the operation of Rule 13(c)(3)(A) or Rule 13(c)(3)(B) is referred to in these rules as the Participant's "final position."

(e) POSITION LIMITS.
  (1) MINIMUM AND MAXIMUM CURRENT PRIMARY POSITIONS. No payment message will be released if the decreases to be recorded for the Sending Participant or the increases to be recorded for the Receiving Participant through the operation of Rule 13 would cause the current primary position of the Sending Participant or the Receiving Participant to

16

PUBLIC

be less than zero ("minimum current primary position") or, except during the end-of-day closing procedure provided for in Rule 13(c), would cause the current position of the Sending Participant or the Receiving Participant to exceed a multiple of its opening primary position, including any deposits to the prefunded balance account representing the difference between the Participant's opening position requirement and its opening position for the current opening position effective period ("maximum current primary position"). The Clearing House may adjust the multiple of the primary opening position that is used to determine a Participant's maximum current primary position from time to time, including during a day, to increase the number or value of payment messages that the system can release and settle.

 (2) MINIMUM CURRENT SUPPLEMENTAL POSITIONS. No payment message will be released if the decreases to be recorded for the Sending Participant through the operation of Rule 13(b) would cause its current supplemental position to be less than zero ("minimum current supplemental position").

 (3) MINIMUM COMBINED POSITION. No payment message will be released if the decreases to be recorded for the Sending Participant through the operation of Rule 13(c)(1) would cause its combined position to be less than zero ("minimum combined position").

(f) WITHDRAWALS FROM THE PREFUNDED BALANCE ACCOUNT; FUNDING PARTICIPANTS' OBLIGATION.

 (1) WITHDRAWALS FROM THE CURRENT SUPPLEMENTAL POSITION.

  (A) A Participant may request the Clearing House as agent for all of the Funding Participants to transfer funds from the prefunded balance account to that Participant in an amount up to the lesser of (i) the Participant's current supplemental position, or (ii) the sum of all supplemental transfers it has made up to the time of its request less any amount that has already been transferred to the Participant under this section (its "default withdrawable amount").

  (B) A Participant may request and the Clearing House in its sole discretion may agree to allow the Participant to be enabled to transfers funds from the prefunded balance account to that Participant in an amount up to the Participant's current supplemental position (its "expanded withdrawable amount"). If the Clearing House in its sole discretion determines that (i) a Participant that is enabled for the expanded withdrawable amount is not managing its payment activity and liquidity consistently with system guidelines, it may disable the previously enabled Participant such that the Participant will be limited to the Participant's default withdrawable

17

amount, or (ii) the enablement of expanded withdrawable amounts is negatively impacting the safe and efficient operation of CHIPS, it may restrict the time period in the CHIPS day during which enabled Participants may request withdrawal of their expanded withdrawable amounts or temporarily or permanently limit all Participants to the default withdrawable amount. The Clearing House may limit all or some enabled Participants to the default withdrawable amount on an intraday basis, if it determines in its sole discretion that such action is needed to ensure the safe and efficient operation of CHIPS, including in the event of a Participant failure.

(C) A request to withdraw either a default withdrawable amount or an expanded withdrawable amount must be in a form and delivered in a manner prescribed by the Clearing House in accordance with Rule 8. The Clearing House is authorized to act on such a request if it receives and has an opportunity to act on the request before the commencement of the end-of-day closing procedure described in Rule 13(d). If the request is for an amount that is greater than the Participant's default withdrawable amount or expanded withdrawable amount, as applicable to the Participant at the time the Clearing House receives the instruction, the Clearing House will notify the Participant that the request is invalid.

(2) NO OTHER WITHDRAWALS. Except as provided for under Rule 12(f)(1), no Participant has any right to demand funds from the prefunded balance account and the Clearing House will not act on any request from a Participant to withdraw funds from the prefunded balance account.

(3) FUNDING PARTICIPANTS' OBLIGATION.

(A) The obligation to pay the withdrawable amount provided for under Rule 12(f)(1) is owed by all Funding Participants jointly, becomes due and payable only upon receipt by the Clearing House of a request for a withdrawal that meets the requirements of Rule 12(f)(1), and is payable solely by the instruction of the Clearing House as agent on behalf of all Funding Participants and solely from the balance in the CHIPS prefunded balance account.

(B) A Participant's current combined position, less its withdrawable amount, at any point in time represents the amount that is to become due to that Participant following the close of business on that day contingent on the event that no additional payment messages to or from that Participant are released and settled. The obligation to pay this amount, when and if it becomes due, is owed by all Funding Participants jointly and is payable solely

18

by the instruction of the Clearing House as agent on behalf of all Funding Participants and solely from the balance in the CHIPS prefunded balance account.

**13. SETTLEMENT.**
(a) RELEASE METHODOLOGY.
    (1) CHIPS will use a methodology for controlling the release of payment messages that has the following characteristics:
        (A) The methodology will be reasonably designed to ensure that:
            (i) no Participant's current primary position is either less than its minimum current primary position or, except during the end-of-day closing procedures provided for in Rule 13(c), more than its maximum current primary position;
            (ii) the sum of the current primary positions of all Participants remains the same following the release as it was before the release;
            (iii) no Participant's current supplemental position is less than its minimum current supplemental position;
            (iv) the sum of the current supplemental positions of all Participants remains the same following the release as it was before the release;
            (v) no Participant's combined position is less than its minimum combined position; and
            (vi) if a Participant has designated a portion of its current supplemental position as its reserved supplemental position under Rule 12(c)(3), CHIPS will not use the reserved supplemental position to settle:
                (I) nonpriority payment messages; or
                (II) preferred payment messages if the Participant has any unreleased urgent payment messages
        (B) The methodology will also be reasonably designed to release:
            (i) urgent payment messages before preferred payment messages and preferred payment messages before nonpriority payment messages; and

(ii) payment messages that share the same priority designation in the order in which they were received, although these sequences may be varied depending on the mix of payment messages in each priority designation and the current positions of the Sending and Receiving Participants or to increase the number or value of payment messages that can be released and settled before the close of the System for delivery of payment messages

(2) The methodology may release a payment message as soon as it has been delivered by the Sending Participant or hold it in storage for release at a later time.

(3) The methodology may include individual release of payment messages, bilateral netting and release of payment messages, multilateral netting and release of Payment messages, or any combination of these.

(4) From time to time the methodology used by CHIPS may be adjusted as part of continuing efforts by the Clearing House to increase the number or value of payment messages that can be released and settled before the close of the System for delivery of payment messages.

(5) The Clearing House shall have exclusive discretion in the choice and operation of the methodology, and no Participant shall have any claim against the Clearing House based on the choice or operation of the methodology.

(b) INTRADAY SETTLEMENT PROCEDURES.

Payment messages released before the close of the System for the delivery of payment messages will be settled in accordance with this Rule 13(b). Payment messages released after the close of the System for the delivery of payment messages will be settled in accordance with Rule 13(c).

(1) INDIVIDUAL RELEASE. If a payment message is released individually, CHIPS will decrease the Sending Participant's current primary position or current supplemental position or both (a Participant's "current positions") by amounts that total the amount of the payment message and increase the Receiving Participant's current positions by amounts that are equal to the decreases in the Sending Participant's corresponding current positions. The release of the payment message and the recording of these entries shall be deemed to be effective simultaneously. Settlement with respect to the payment message is complete when the System has recorded the decreases in the Sending Participant's current positions and the increases in the Receiving Participant's current positions. Completion of settlement constitutes final settlement of that payment message and final discharge and payment of the Sending Participant's obligation to pay the amount of the payment message to the Receiving Participant.

(2) BILATERAL NETTING AND RELEASE. If a payment message is released in a batch that consists of one or more payment messages from a Participant ("First Participant") as a Sending Participant to another Participant ("Second Participant") as a Receiving Participant and one or more payment messages from the Second Participant as a Sending Participant to the First Participant as a Receiving Participant, the obligation of the First Participant to pay the Second Participant for the amount of any payment messages in the batch that the First Participant is sending to the Second Participant will be netted by setting off and applying the obligation of the Second Participant to pay the First Participant for the amount of any payment messages in the batch that it is sending to the First Participant. The balance remaining from this netting is referred to as the "bilateral net balance." The current positions of each Participant with payment messages in the batch will be decreased by amounts that total the amount of each payment message in the batch for which it is the Sending Participant and, for each payment message for which it is the Receiving Participant, increased by amounts that are equal to the decreases in the Sending Participant's corresponding current positions. As a result of these entries, the current positions of the Participant whose bilateral net balance is positive will be increased by an amount equal to the amount of the bilateral net balance and the current positions of the Participant whose bilateral net balance is negative will be decreased by the amount of the bilateral net balance. The release of these payment messages, the netting of these obligations, and the recording of these entries shall be deemed to be effective simultaneously. Settlement with respect to all payment messages in the batch is complete when the System has recorded the decreases and increases of the amounts of the payment messages in the batch to the current positions of the Participants. Completion of settlement constitutes final settlement of all payment messages in the batch and final discharge and payment of the obligations of each Participant as a Sending Participant to pay the amount of each payment message in the batch that is released to the other Participant as a Receiving Participant.

(3) MULTILATERAL NETTING AND RELEASE. If a payment message is released in a batch that includes payment messages to or from three or more Participants, the obligation of each Participant to pay the amount of each payment message sent by it as a Sending Participant in the batch to another Participant as a Receiving Participant will be netted by setting off and applying against the Sending Participant's obligation the right of the Sending Participant to receive payment from the Receiving Participant of the amount of any other payment message sent to the Sending Participant by the Receiving Participant in the batch. The balance resulting from this netting equals the bilateral net balance between each pair of

Participants. The bilateral net balance of obligations owed by each Sending Participant to each Receiving Participant with respect to payment messages in the batch will be netted by setting off and applying against that balance the bilateral net balance of obligations owed to the Sending Participant by other Participants who have payment messages sent through CHIPS in the batch. The balances resulting from this netting are referred to as the "multilateral net balances." The current positions of each Participant with payment messages in the batch will be decreased by amounts that total the amount of each payment message in the batch for which it is the Sending Participant and increased in respect of payment messages for which it is the Receiving Participant by amounts that are equal to the decreases in the Sending Participant's corresponding current positions. As a result of these entries, the current positions of a Participant whose multilateral net balance is positive will be increased by the amount of its multilateral net balance and the current positions of a Participant whose multilateral net balance is negative will be decreased by the amount of its multilateral net balance. The release of these payment messages, the netting of these obligations, and the recording of these entries shall be deemed to be effective simultaneously. Settlement with respect to all payment messages in the batch is complete when the System has recorded the decreases and increases of the amounts of the payment messages in the batch to the current positions of the Participants. Completion of settlement constitutes final settlement of all payment messages in the batch and final discharge and payment of the obligation of each Participant as a Sending Participant to pay the amount of each payment message in the batch that is released to another Participant as a Receiving Participant.

(c) END-OF-DAY CLOSING PROCEDURE.

(1) INITIAL CLOSING, NETTING, AND RELEASE. Immediately following the close of the System for the delivery of payment messages, CHIPS will net, set off, and release as many of the payment messages that remain in storage as possible using the procedures described in Rule 13(b), except that CHIPS will combine the current primary position and the current supplemental position of each Participant into the Participant's combined position and will apply no limits to the Participant's combined position other than the minimum combined position. Settlement with respect to all payment messages released as part of this procedure is complete when the System has recorded the decreases and increases to the current combined positions. Completion of settlement constitutes final settlement of all payment messages released as part of this procedure and final discharge and payment of the obligation of a Participant as a Sending Participant to pay

the amount of each payment message released as part of this procedure to another Participant as a Receiving Participant.

(2) CALCULATION OF CLOSING POSITIONS. If any payment messages remain in storage following the procedures described in Rule 13(c)(1), CHIPS will calculate a multilateral net balance for all Participants based on the payment messages in storage without actually releasing any of those payment messages. The resulting multilateral net balance for each Participant will be combined with that Participant's current combined position to calculate the amount referred to herein as the Participant's "closing position." If a Participant's closing position is a negative number, it is the Participant's "closing position requirement." Immediately following this calculation, the Clearing House will prepare and send to each Participant an "Initial End-of-Day Balance Report" showing its closing position. The Initial End-of-Day Balance Report of each Funding Participant shall also show the closing position of each Participant for which it has been designated Funding Participant.

(3) FINAL PREFUNDING, NETTING, AND RELEASE. Each Participant with a closing position requirement will be given 30 minutes from the time that the Clearing House sent the Initial End-of-Day Balance Reports to pay the amount of its closing position requirement by transferring funds finally and irrevocably to the prefunded balance account in the amount of its closing position requirement. These funds transfers may be sent directly by the Participant itself or indirectly through another financial institution that has an account at a Federal Reserve Bank.

(A) FULL FINAL PREFUNDING.

(i) If each of the transfers referred to in the first sentence of Rule 13(c)(3), above, are made, all of the payment messages that remain in storage will be netted, set off, and released using the procedures described in Rule 13(b)(3) except that CHIPS will combine the current primary position and the current supplemental position of each Participant into the Participant's combined position and will apply no limits to the Participant's combined position other than the minimum combined position. The release of these payment messages, the netting of these obligations, and the recording of these entries shall be deemed to be effective simultaneously. Settlement with respect to all payment messages released as part of this procedure is complete when the System has recorded the decreases and increases to the current combined positions. Completion of settlement constitutes final settlement of all payment messages released as part of this procedure and final discharge and payment of