

# Exhibit V

Charles A. Gilman (CG-3924)
Cahill Gordon & Reindel LLP
80 Pine Street
New York, New York 10005
Tel:  (212) 701-3000
Fax:  (212) 269-5420

Attorneys for Defendant Deutsche Bank Trust Company Americas, as Trustee

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ARISTOCRAT LEISURE LIMITED,<br><br>                                   Plaintiff,<br><br>                  *- against -*<br><br>DEUTSCHE BANK TRUST COMPANY<br>AMERICAS, AS TRUSTEE,<br><br>                                   Defendant. | 04 CV 10014 (PKL) (ECF case) |

### ANSWER, DEFENSES AND COUNTERCLAIMS OF DEFENDANT
### DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE

As and for its Answer, Defenses and Counterclaims to the Complaint for Declaratory Re-
lief (the "Complaint") of Plaintiff Aristocrat Leisure Limited ("Aristocrat" or the "Issuer"), de-
fendant Deutsche Bank Trust Company Americas ("DBTCA" or the "Trustee"), sued herein
solely in its capacity as trustee, by and through its undersigned counsel, states as follows (all
capitalized terms are used as defined in the Indenture attached to the Complaint unless otherwise
defined herein):

-2-

## FOR ITS ANSWER

1.     Admits upon information and belief the allegations of the first sentence of Paragraph 1 of the Complaint, denies knowledge or information sufficient to form a belief as to the truth of the allegations of the second sentence of Paragraph 1 of the Complaint, and refers to the Indenture for the terms thereof.

2.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence of Paragraph 2 of the Complaint, denies the allegations of the second sentence of Paragraph 2 of the Complaint, avers that the Trustee is not empowered unilaterally to change the business terms of the Indenture, refers to the Indenture for the terms thereof, and avers that the alleged error referred to in Paragraph 2 of the Complaint (if it be an error) precludes plaintiff from exercising its right to redeem the Convertible Bonds until such Exchange Rate error is reformed.

3.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 3 of the Complaint, except admits that Aristocrat seeks relief including but not limited to the declarations set forth, and refers to the Indenture for the terms thereof.

4.     Admits upon information and belief the allegations of Paragraph 4 of the Complaint.

5.     Admits that DBTCA, f/k/a Bankers Trust Company, is a banking corporation duly organized and existing under the laws of the State of New York with its principal office and place of business in New York, New York and that DBTCA presently serves as Trustee under the Indenture dated as of May 31, 2001, and otherwise denies the allegations of Paragraph 5 of the Complaint.

-3-

6.      Admits the allegations of Paragraph 6 of the Complaint.

7.      Admits the allegations of Paragraph 7 of the Complaint.

8.      Admits that DBTCA is currently the Trustee under the Indenture, denies the re-
maining allegations of Paragraph 8 of the Complaint, and specifically avers that DBTCA is not
now and never has been "trustee for the Bond offering, co-manager of the Bonds, and also Aris-
tocrat's financial advisor."

9.      Admits that Aristocrat has certain rights to redeem the Bonds under the Indenture
as those rights are set forth in the Indenture attached to the Complaint, refers to the Indenture for
the terms thereof, and otherwise denies the allegations of Paragraph 9 of the Complaint.

10.     Denies knowledge or information sufficient to form a belief as to the truth of the
allegations of Paragraph 10 of the Complaint, and refers to the Indenture for the terms thereof.

11.     Denies the allegations of Paragraph 11 of the Complaint insofar as purporting to
state any agreement of the Trustee, and otherwise denies knowledge or information sufficient to
form a belief as to the truth of the allegations of Paragraph 11 of the Complaint, and refers to the
Indenture for the terms thereof.

12.     Admits the allegations of the first and third sentences of Paragraph 12 of the
Complaint insofar as alleging that the alleged error in the Exchange Rate (if it be an error) must
be reformed before any redemption of the Bonds, denies the allegations of the second sentence of
Paragraph 12 of the Complaint, and refers to the Indenture for the terms thereof.

13.     Denies the allegations of Paragraph 13 of the Complaint and refers to the Inden-
ture for the terms thereof.

-4-

14.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence of Paragraph 14 of the Complaint, denies the allegations of the second sentence of Paragraph 14 of the Complaint, and refers to the Indenture for the terms thereof.

15.     Denies the allegations of Paragraph 15 of the Complaint, and refers to the Indenture for the terms thereof.

16.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence of Paragraph 16 of the Complaint insofar as they refer to what Aristocrat believes, otherwise denies the allegations of Paragraph 16 of the Complaint, except admits that the Indenture is "plain on its face," and refers to the Indenture, the Offering Memorandum dated May 24, 2001 (referred to in the Complaint as the Prospectus) and the Bonds for the terms thereof.

17.     Denies the allegations of Paragraph 17 of the Complaint, refers to the Indenture for the terms thereof, and avers that Issuer has failed to provide a valid notice of redemption, has not issued any call for redemption in accordance with Article 12 of the Indenture and accordingly has no right to terminate the Conversion Rights of the Holders in the manner contemplated by the Complaint.

18.     Repeats and realleges the answers of Paragraphs 1 through 17 above as if fully set forth here.

19.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 19 of the Complaint, and refers to the Indenture for the terms thereof.

-5-

20.     Denies the allegations of Paragraph 20 of the Complaint, and refers to the Indenture for the terms thereof.

21.     Denies the allegations of Paragraph 21 of the Complaint, and refers to the Indenture for the terms thereof.

22.     Denies the allegations of Paragraph 22 of the Complaint, and refers to the Indenture for the terms thereof.

## GENERAL DENIAL

1.     Except as expressly admitted above, the allegations of the Complaint are denied.

## FOR ITS DEFENSE

1.     The Trustee does not interpret the Indenture as does the Issuer.

2.     The Exchange Rate as set forth in the Indenture is a substantive business term which the Trustee is not empowered unilaterally to change.

3.     To date, Holders of a Majority in aggregate principal amount of the Bonds Outstanding have not yet instructed the Trustee in respect of this action but rather have sought leave of the Court to intervene as additional defendants in this action so that they might protect their interests in the Bonds and might express directly to the Court their position on the requests by Aristocrat to reform the Indenture and declare certain rights in respect thereof.

4.     The Trustee refers to the proposed Answer and Counterclaim of Intervening Defendants which Holders of a Majority in aggregate principal amount of the Bonds Outstanding request leave of the Court to file.

5.     It is not the position of the Trustee to sidestep the Indenture's amendment requirements and, on its own, consent to substantive changes in the business terms of the Inden-

-6-

ture.  The Trustee believes that it is important for the Court to hear directly from the Holders on the proposed reformation of the Indenture and the other issues raised in the Complaint and consents to their requested intervention and to the filing of their proposed Answer and Counterclaim.

### FOR ITS FIRST COUNTERCLAIM (FOR DECLARATORY RELIEF)

1. Plaintiff Aristocrat is Issuer of the Bonds and a party to the Indenture.

2. DBTCA is the Trustee under the Indenture.

3. A copy of the Indenture is attached to the Complaint.

4. The language of the Indenture is plain and unambiguous.

5. Proper interpretation of the Indenture requires that it be read as a whole.

6. The interplay between the redemption, conversion, notice and call provisions of the Indenture can be understood by a review of Article 1 ("Definitions"), Article 12 ("Redemption or Repurchase of Bonds"), Article 13 ("Conversion") and Article 14 ("Miscellaneous Provisions") of the Indenture.

7. The Trustee believes that insofar as the Issuer and the Holders of the Bonds have differing understandings of the interplay between the redemption, conversion, notice and call provisions of the Indenture, the Court should permit the Holders to intervene as defendants in this action so that they may express directly to the Court their position on reformation of the Exchange Rate and the other issues presented.

8. The Trustee intends faithfully to perform all of its obligations under the Indenture, but the Trustee does not interpret the interplay between the redemption, conversion, notice and call provisions of the Indenture in the same way as does the Issuer.  The Trustee will abide this Court's declarations in respect of the Indenture.

-7-

9.      In this First Counterclaim for Declaratory Relief, the Trustee sets forth its under-standing of the interplay between the redemption, conversion, notice and call provisions of the Indenture, and requests an Order from this Court declaring that the Trustee's interpretation of the Indenture is correct.

10.      Any declaration by the Court should apply across the board to all Holders of the Bonds.

11.      A copy of the Issuer's December 20, 2004 purported notice of redemption is at-tached hereto as Exhibit A.

12.      The Issuer relies on Section 13.01 of the Indenture which provides that "[s]ubject to and upon compliance with the provisions of this Article, unless previously redeemed, repur-chased and cancelled, or converted, at the option of the Holder thereof, any Bond may be con-verted during the Conversion Period, in whole, or in part in integral multiples of US$1,000 prin-cipal amount, for newly-issued Ordinary Shares paid up in full; **provided, that the Conversion Rights will terminate immediately upon, and simultaneously with, any call by the Issuer for the redemption of the Bonds in accordance with Article 12**" (emphasis added).  The Issuer conflates the separate call and notice provisions of the Indenture in contending that its December 20, 2004 notice of redemption is the same thing as a "call by the Issuer for the redemption of the Bonds in accordance with Article 12" and thus was effective immediately to terminate all Con-version Rights.

13.      In the opinion of the Trustee, the construction of the redemption and conversion provisions of the Indenture set forth in the Issuer's Complaint is unreasonable and harsh in that it

-8-

effectively seeks to terminate all Conversion Rights of all Holders without any notice and is inconsistent with a number of provisions in the Indenture.

14.    To give meaning to the above-quoted proviso in Section 13.01, it is essential to consider all of the language in that proviso.  Specifically, the proviso states that termination of Conversion Rights requires a "call" for redemption by the Issuer that is "in accordance with Article 12."

15.    The term "call" is not defined in the Indenture.  The Issuer contends that the term "call" is the same thing as "notice".  However, Section 12.04 of the Indenture requires each notice of redemption to set forth "the date on which the right to convert such Bonds or the portions thereof to be redeemed expires."  Such a requirement would be superfluous if "call" meant the same thing as "notice" because of the proviso in Section 13.01 that Conversion Rights terminate immediately and simultaneously with any "call" for redemption.  Section 12.04 of the Indenture requires the notice of redemption to specify the date on which the Holder will cease to have the right to convert the Bonds.  The requirement of such a specification in the notice of redemption would be meaningless if the expiration of the right to convert occurred simultaneously with the notice of redemption — it would be no notice at all, a dead letter.

16.    Section 12.04 of the Indenture also states: "No later than 10:00 a.m. at least one Business Day prior to the Redemption Date specified in the notice of redemption given as provided in this Section, the Issuer will deposit or cause to be deposited with the Trustee at the Corporate Trust Office . . . in immediately available funds, an amount which shall be sufficient to redeem on the Redemption Date all of the Bonds **so called for redemption** (other than those theretofore surrendered for conversion into Ordinary Shares) at the appropriate redemption

-9-

price" (emphasis added).  Thus, in order for a "call" for redemption by the Issuer to be in accordance with Article 12, the Issuer must also deposit the necessary funds with the Trustee.  To date, the Issuer has not made any such deposit of funds with the Trustee.

17.    The above-quoted language from Section 12.04 of the Indenture referring to those Bonds "theretofore surrendered for conversion" implies that Conversion Rights as contemplated under this Indenture could be exercised up to "one Business Day prior to the Redemption Date." That would not be possible if "call" were equated to "notice" as urged by the Issuer.

18.    The Section 13.01 proviso relied upon by the Issuer also requires that the call by the Issuer for the redemption of the Bonds be "in accordance with Article 12" and Section 12.04 of the Indenture provides that "notice of redemption to the Holders of Bonds to be redeemed shall be given" and Section 12.04 goes on to provide that "[n]otice of redemption to each Holder shall specify:

- o    "the unpaid principal amount of each Bond held by such Holder to be redeemed,

- o    "the Redemption Date,

- o    "the redemption price and the amount of any accrued and unpaid interest payable on the Redemption Date,

- o    "the CUSIP or other identifying number of the Bonds and the place or places of payment and that payment will be made upon presentation and surrender of the Bonds to be redeemed

- o    "and shall also specify the Conversion Price then in effect and

- o    "the date on which the right to convert such Bonds or the portions thereof to be redeemed expires."

-10-

19.    The Issuer's December 20, 2004 purported notice of redemption does not comply with the requirements set forth in Section 12.04 of the Indenture.  Specifically, it does not fix a specific calendar date for redemption.  Rather, it states "such redemption to occur on the date that is 45 days after the date that the correction of the Exchange Rate [is made by the Court]." [Exhibit A]

20.    Because there is no identified Redemption Date, the principal and interest calculations relating to a redemption required to be set forth in the notice are not made, and the Issuer's notice does not set forth "the unpaid principal amount of each Bond held by such Holder to be redeemed [or] the redemption price and the amount of any accrued and unpaid interest payable on the Redemption Date" as required by Section 12.04.

21.    The deficiencies in the Issuer's December 20, 2004 purported notice of redemption have caused The Depository Trust Company ("DTC"), the clearing system whose chosen nominee, Cede & Co., is the sole registered Holder of these Bonds, to make inquiry of the Trustee as to what it should do in respect of the purported notice since it failed to state a definite Redemption Date.

22.    Section 12.04 of the Indenture also provides that notice of redemption shall be given "at least 30 days and not more than 60 days prior to the applicable Redemption Date."  It is now already more than 15 days since December 20, 2004.  It is therefore not possible that the Issuer's December 20, 2004 purported notice of redemption, contingent upon the date of reformation of the Exchange Rate plus 45 more days, could satisfy the 60-day limit under Section 12.04 of the Indenture.

-11-

23.     Section 14.04 of the Indenture provides that notices given by the Issuer to Holders of the Bonds "shall be deemed to have been given" on the "seventh day after the date of such mailing". Even if the Issuer's December 20, 2004 notice of redemption were the same thing as a call for redemption (which it is not), and even if it complied with the requirements of Article 12 of the Indenture (which it does not), by the express terms of Section 14.04 of the Indenture the Issuer's notice would not be deemed to have been given until the seventh day after its mailing.

24.     A number of Holders requested conversion of their Bonds pursuant to the terms of the Indenture before the seventh day after December 20, 2004 (assuming that the Issuer's notice was mailed at the earliest possible opportunity). The Trustee duly presented such conversion requests to the Issuer. The Issuer has rejected all such conversion requests.

25.     As the Trustee interprets the Indenture, requests by Holders for conversion of their Bonds into Ordinary Shares made prior to the seventh day after mailing of the Issuer's purported notice of redemption are, by virtue of Section 14.04 of the Indenture, prior to that notice being deemed to have been given and therefore should not be affected by it.

26.     Thus, as the Trustee interprets the interplay between the redemption, conversion, notice and call provisions of the Indenture:

o       the December 20, 2004 purported notice of redemption sent by the Issuer does not comply with the requirements of the Indenture;

o       is not effective to constitute a call for redemption;

o       does not terminate the Conversion Rights of the Holders;

o       and, even if said notice did comply with the requirements of the Indenture and was effective to constitute a call for redemption, it cannot terminate Conversion

-12-

Rights until it is given and it is not deemed to have been given until the seventh

day after mailing and therefore the Issuer should honor the conversion requests of

Holders who requested conversion of their Bonds into Ordinary Shares prior to

the seventh day after mailing of the Issuer's December 20, 2004 notice.

Only when the Issuer has given the Holders a sufficient notice of redemption, deposited the appropriate funds with the Trustee, and otherwise complied with all requirements of Article 12 of the Indenture and other applicable terms of the Indenture, is the Issuer's call for redemption effective to terminate the Conversion Rights of the Holders under Section 13.01.

27.    It is essential to give meaning to all language of the Indenture.  The Trustee's interpretation of the Indenture does that.  The interpretation of the Indenture proffered by the Issuer in its Complaint does not give meaning to all parts of the Indenture and creates conflicts among and between its various provisions.

28.    The Trustee is entitled to an Order from this Court, binding on the Issuer and binding on all Holders, declaring that the Trustee's interpretation of the Indenture as outlined above is correct.

29.    Trustee DBTCA is the Trustee for all Holders.  Any reformation of the Exchange Rate is a change in a fundamental business term of the Indenture.  Prior to any call for redemption, the Issuer should be required to give notice to all Holders of any reformation of the Exchange Rate and a reasonable opportunity to consider the impact of any such reformation and decide whether or not to exercise their Conversion Rights.  Trustee respectfully suggests that the Court order a 30-day period following notice of any reformation before the Issuer is permitted to issue any notice of redemption.  A 30-day period to digest the impact of any reformation of the

-13-

Exchange Rate, coupled with the notice provisions existing in the Indenture is, in the opinion of Trustee, reasonable under the circumstances.

## FOR ITS SECOND COUNTERCLAIM (FOR INDEMNIFICATION)

30.     DBTCA repeats and realleges the allegations contained in Paragraphs 1 through 5 of its First Counterclaim as though fully set forth herein.

31.     In this action, the Issuer has named the Trustee as a defendant in connection with its claims for reformation of the Indenture and for declaratory relief as prayed for in the Complaint.

32.     The Issuer has not alleged any wrongdoing or breach of duty whatsoever on the part of the Trustee.

33.     Section 5.06 of the Indenture provides in part that as Issuer, counterclaim defendant Aristocrat, "agrees to pay to the Trustee from time to time, and the Trustee shall be entitled to, compensation as agreed between the Issuer and the Trustee (which shall not be limited by any provision of law in regard to the compensation of a trustee of an express trust) and the Issuer agrees to pay or reimburse the Trustee and each predecessor Trustee upon its request for all reasonably documented expenses, disbursements and advances properly incurred or made by or on behalf of it in accordance with any of the provisions of this Indenture (including the reasonable compensation and the reasonably documented expenses and disbursements properly incurred of its counsel and of all agents and other Persons not regularly in its employ) except any such expense, disbursement or advance as may arise from its gross negligence, bad faith or wilful misconduct."

-14-

34.    Section 5.06 of the Indenture also provides that as Issuer, counterclaim defendant Aristocrat "covenants to indemnify the Trustee (including its capacity as Registrar, Transfer Agent, Paying Agent, and Conversion Agent, its officers, directors, employees and agents) and each predecessor Trustee for, and to hold it harmless against, any loss, liability or expense incurred without gross negligence, bad faith or wilful misconduct on its part, arising out of or in connection with the acceptance or administration of (i) this Indenture or the trusts hereunder or (ii) its duties hereunder or thereunder, including the reasonably documented costs and expenses properly incurred of defending itself against or investigating any claim of liability with respect to the foregoing."

35.    Section 5.06 of the Indenture further provides that the "obligations of the Issuer under this Section to compensate and indemnify the Trustee and each predecessor Trustee and to pay or reimburse the Trustee and each predecessor Trustee for reasonably documented expenses, disbursements and advances properly incurred or made shall constitute additional indebtedness hereunder and shall survive the resignation or removal of the Trustee and the satisfaction and discharge of this Indenture.  Such additional indebtedness shall be a senior claim and lien to that of the Bonds upon all property and funds held or collected by the Trustee as such, except funds previously deposited and held in trust for the benefit of the Holders of particular Bonds, and the Bonds are hereby subordinated to such senior claim."

36.    The Trustee has demanded of Aristocrat in writing that Aristocrat honor its obligations to compensate, reimburse and indemnify the Trustee as set forth in Section 5.06 of the Indenture.  A copy of the Trustee's demand is attached hereto as <u>Exhibit B</u>.

-15-

37.    To date, without justification or excuse, Aristocrat has failed to honor its obliga-tions fully to compensate, reimburse and indemnify the Trustee as set forth in Section 5.06 of the Indenture.

38.    The Trustee is entitled to judgment requiring Plaintiff fully to compensate, reim-burse and indemnify the Trustee as set forth in Section 5.06 of the Indenture, damages for which may be set at inquest at the end of these proceedings.

**WHEREFORE,** Deutsche Bank Trust Company Americas respectfully requests that the Court enter judgment as follows:

a.    Denying any relief against DBTCA apart from such reformation of the Indenture and declaration of rights under the Indenture uniformly applicable to all Holders of the Bonds as the Court may see fit to issue after hearing and considering the positions of the Issuer, the Trus-tee and the Holders of the Bonds;

b.    Granting DBTCA a declaration of rights under the Indenture in accordance with its First Counterclaim and consistent with a proper interpretation of the Indenture;

c.    Granting DBTCA judgment against Plaintiff requiring Plaintiff fully to compen-sate, reimburse and indemnify the Trustee as set forth in Section 5.06 of the Indenture and awarding to DBTCA money damages against Aristocrat in accordance with its Second Counter-claim in an amount to be proven at trial and sufficient fully to compensate, reimburse and in-demnify DBTCA as provided for in Section 5.06 of the Indenture; and

-16-

d.      Granting to DBTCA such other and further relief as the Court may deem just and

proper.

Dated:  New York, New York
        February 7, 2005

                                        Respectfully submitted,


                                        CAHILL GORDON & REINDEL LLP

                                        By:____/s/ Charles A. Gilman____
                                              Charles A. Gilman (CG-3924)
                                        80 Pine Street
                                        New York, New York  10005
                                        (212) 701-3000

                                        Attorneys for Defendant Deutsche Bank
                                        Trust Company Americas, as Trustee