# EXHIBIT A

🏳 KeyCite Blue Flag – Appeal Notification

Appeal Filed by   In Re: Application of LOUDMILA BOURLAKOVA, to take discovery for use in a foreign proceeding pursuant to 28 U.S.C. § 1782, 2nd Cir.,   December 10, 2024

2024 WL 4839047
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

IN RE: Application of Loudmila BOURLAKOVA and Veronica Bourlakova to Take Discovery for Use in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782

24-MC-71 (JPO)
|
Signed November 20, 2024

**Attorneys and Law Firms**

E. Scott Schirick, Daniel John Pohlman, Pryor Cashman LLP, New York, NY, Alan Marc Mendelsohn, Alston & Bird LLP, New York, NY, for In re Application of Loudmila Bourlakova and Veronica Bourlakova to take discovery for use in a foreign proceeding pursuant to 28 U.S.C. § 1782.

Nicole Ann Sullivan, White & Williams, LLP, New York, NY, for Intervenors Vera Kazakov, Nikolai Kazakov.

MEMORANDUM AND ORDER

J. PAUL OETKEN, District Judge:

**\*1** On February 20, 2024, Petitioners Loudmila and Veronica Bourlakova ("the Bourlakovas") filed an *ex parte* application for discovery pursuant to 28 U.S.C. § 1782, seeking to serve a subpoena on Clearing House Payments Company L.L.C. ("CHIPS") in aid of their civil litigation in the United Kingdom ("U.K. Proceeding"). (ECF No. 1.) The Court granted that application on February 22, 2024. (ECF No. 7.) On March 25, 2024, Nikolai and Vera Kazakov ("the Kazakovs") filed a motion to intervene, to vacate the Court's February 22 order, and to quash the subpoena. (ECF No. 8.) For the reasons that follow, the Kazakovs' motion to intervene is granted; the motion to vacate this Court's order and quash the subpoena is denied.

**I. Background**

This application stems from wide-ranging disputes over $3.7 billion in assets left by Russian businessman Oleg Bourlakov ("Mr. Bourlakov"), who died of COVID-19 in 2021. (ECF No. 3 ¶¶ 10, 17.) Mr. Bourlakov's estranged wife, Loudmila Bourlakova, and their daughter, Veronica Bourlakova, brought suit in the High Court of Justice in London against Mr. Bourlakov, the Kazakovs, and ten other defendants. (ECF No. 3-1 at 2.) The Bourlakovas alleged in the U.K. Proceeding that following a breakdown of marital and familial relationships, Mr. Bourlakov, acting in concert with the Kazakovs, had pursued a strategy of "hid[ing] Bourlakov Family Assets from his wife and adult daughters" through "a variety of fraudulent and unlawful means." (ECF No. 3 ¶ 11; *see* ECF No. 3-1 ¶ 4.) This included, for example, "[c]oncocting false stories that half of the Bourlakov family assets ... belongs to Mr Bourlakov's brother in law, Mr Kazakov," and "[m]isappropriating assets from [the Bourlakovas] and arranging for those assets to be placed in structures which are owned and/or controlled by Mr Bourlakov [and the Kazakovs]." (ECF No. 3-1 ¶ 5.) As relevant here, the Bourlakovas suspected transfers of Bourlakov family assets into "entities or bank accounts controlled by the Kazakovs," some of which were denominated in U.S. dollars and involved U.S.-based correspondent banks. (ECF No. 3 ¶¶ 18-19.) The Bourlakovas' proposed subpoena requests from CHIPS, a Manhattan-based clearing house, "[a]ll Documents and Communications, including any wire transfer notes, regarding transfers or settlement payments" involving Mr. Bourlakov, the Kazakovs, seven other individuals, thirty-eight entities, and nearly a hundred accounts from "the time period of January 1, 2018 to present." (*See* ECF No. 4-1 at 7-14.)

**II. Legal Standard**

Pursuant to 28 U.S.C. § 1782, a district court may order a person within the district "to produce a document ... for use in a proceeding in a foreign or international tribunal ... upon the application of any interested person." 28 U.S.C. § 1782(a). A district court has authority to grant a § 1782 application if it satisfies three statutory requirements:

> (1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding

before a foreign [or international] tribunal, and (3) the application is made by a foreign or international tribunal or any interested person.

 *2 *Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 148 (2d Cir. 2022) (quoting *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015)). Once the statutory requirements are met, the district court must then consider four discretionary factors that the Supreme Court laid out in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004):

> (1) whether the person from whom discovery is sought is a participant in the foreign proceeding, in which case the need for § 1782(a) aid generally is not as apparent; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the request is unduly intrusive or burdensome.

*Mees*, 793 F.3d at 298 (quoting *Intel*, 542 U.S. at 264-65) (quotation marks omitted). "Congress has expressed as its aim that the statute be interpreted broadly and that courts exercise discretion in deciding whether, and in what manner, to order discovery in particular cases." *In re Edelman*, 295 F.3d 171, 180 (2d Cir. 2002).

### III. Discussion

The Bourlakovas do not oppose the Kazakovs' motion to intervene. (ECF No. 18 ("Opp'n") at 5 n. 2.) For § 1782 applications, "a party against whom the requested information is to be used has standing to challenge the validity of such a subpoena on the ground that it is in excess of the terms of ... § 1782." *Application of Sarrio, S.A.*, 119 F.3d 143, 148 (2d Cir. 1997) (quotations marks omitted). Because the Bourlakovas intend to use the requested discovery in their U.K. Proceeding against the Kazakovs, the Kazakovs' motion to intervene is granted.

The Court now turns to the motion to vacate its order and quash the subpoena pursuant to the mandatory requirements and discretionary factors under § 1782.

### A. Statutory Requirements

Among the three statutory requirements under § 1782, "[t]he Kazakovs do not dispute that the Clearing House resides in the Southern District of New York or that the Petitioners are interested parties ...." (ECF No. 20 ("Reply") at 9.) The only disputed requirement is whether "the discovery is *for use* in a foreign proceeding before a foreign ... tribunal." *Fed. Republic of Nigeria*, 27 F.4th at 148 (emphasis added). The Bourlakovas maintain that they intend to use "the CHIPS transaction data ... to assess and quantify [their] claims in the U.K. Proceedings for damages[,] to help determine whether there was any misappropriation," and to "substantiate [their] core allegation[ ] that there was and/or is a concerted effort to conceal assets that belong to Oleg Bourlakov's estate." (Opp'n at 20.) The Kazakovs contend to the contrary that bank transfers are "not an allegation made by Petitioners in the [U.K.] Proceeding," and that the § 1782 application is an improper "fishing expedition." (Reply at 9-10, 13; *see* ECF No. 21 ¶ 12.)

"The plain meaning of the phrase 'for use in a proceeding' indicates something that will be employed with some advantage or serve some use in the proceeding." *Mees*, 793 F.3d at 298. Understanding that Congress did not intend § 1782 to provide only "parsimonious assistance," the Second Circuit has held that "[u]nder § 1782, an applicant may seek discovery of any materials that can be made use of in the foreign proceeding to increase her chances of success." *Id*. While an applicant must "demonstrate that the evidence is minimally relevant to the foreign proceeding," *In re BonSens.org*, 95 F.4th 75, 80 (2d Cir. 2024), "a district court should not consider the discoverability [or] ... admissibility of evidence in the foreign proceeding in ruling on a section 1782 application," *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) (emphasis omitted). Instead, courts should focus on "the *practical ability* of an applicant to place a beneficial document—or the information it contains—before a foreign tribunal." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 131 (2d Cir. 2017).

**\*3** Although "courts have denied section 1782 applications when the discovery sought is a 'fishing expedition' for anticipated use in 'nonexistent, purely hypothetical proceedings,' " *In re Arida, LLC*, No. 19-MC-522, 2020 WL 7496355, at \*7 (S.D.N.Y. Dec. 21, 2020) (collecting cases), the U.K. Proceeding is pending, not hypothetical. In the U.K. Proceeding, the Bourlakovas have alleged a general scheme whereby Mr. Bourlakov and the Kazakovs sought to conceal and misappropriate various family assets. (ECF No. 3-1 ¶¶ 4-5.) They also pointed to specific instances of misappropriation that could be corroborated by bank records. (*See, e.g.*, *id.* ¶ 149 (alleging "[m]isappropriation of Edelweiss' assets through the use of forged documents," where "[t]he Claimants do not know the extent to which any transfer of Edelweiss' assets has taken place pursuant to the Finco / Edelweiss document").) These allegations suffice to render the CHIPS transaction records "minimally relevant to the foreign proceeding," *In re BonSens.org*, 95 F.4th at 80, which the Bourlakovas could "employ[ ] with some advantage" in the U.K. court, *Mees*, 793 F.3d at 298. *See In re Klein*, No. 20-MC-203, 2022 WL 1567584, at \*7 (S.D.N.Y. May 18, 2022) (holding U.S. bank records are sought "for use" in a foreign proceeding involving concealment of probate assets where "the applicants ... are the plaintiffs in the [foreign proceeding]" and "the application in this case involves assets that are disputed in the [foreign proceeding]"). To the extent the Kazakovs argue that the Bourlakovas lack a proper evidentiary basis to support their U.K. allegations (*see* ECF No. 9 ("Mem.") at 25; Reply at 11), "[a] district court's focus in considering a request under § 1782 is not on the merits of the proposed claim, but on the movant's 'practical ability to inject the requested information into a foreign proceeding.' " *IJK Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669, 680 (2d Cir. 2022) (quoting *In re Accent Delight*, 869 F.3d at 132; *see Banoka, S.à.r.l. v. Alvarez & Marsal Inc.*, No. 1:22-MC-182, 2024 WL 1242994, at \*7 (S.D.N.Y. Mar. 22, 2024)) (holding discovery is "for use" in foreign proceeding despite "Petitioners' concession that they lacked sufficient evidence to adequately plead their proposed claims under English Law"). [1] Because bank transfers among Mr. Bourlakov, the Kazakovs, and various entities they control are pertinent to the Bourlakovas' ability to prove their allegations of asset concealment and misappropriation in the U.K. Proceeding, the Court concludes that the discovery is for use in a foreign proceeding. Therefore, the Bourlakovas' application satisfies all three statutory requirements under § 1782.

---

[1] The Kazakovs cite a magistrate judge's opinion in this case to support their "fishing expedition" argument, but fail to note that the district court rejected that opinion with respect to the "for use" requirement. (*See* Mem. at 26 (citing *Banoka S.à.r.l. v. Alvarez & Marsal, Inc.*, No. 22-MC-182, 2023 WL 1433681, at \*18 (S.D.N.Y. Feb. 1, 2023), *order adopted in part, rejected in part*, No. 1:22-MC-182, 2024 WL 1242994 (S.D.N.Y. Mar. 22, 2024)).)

**B. Discretionary Factors**

Among the four *Intel* discretionary factors, the Kazakovs do not contest that the first two favor the Bourlakovas. [2] (*See* Reply at 10.) They argue, however, that the § 1782 request is a bad-faith attempt to "to circumvent ... policies of ... the United States," and is "unduly intrusive or burdensome." (*Id.* (quoting *Intel*, 524 U.S. at 265).)

---

[2] First, because CHIPS is not a participant in the U.K. Proceeding, its evidence "may be unobtainable absent § 1782(a) aid." *Intel*, 524 U.S. at 264. Second, British courts are generally "receptiv[e] ... to U.S. federal-court judicial assistance." *Id.* at 265; *see, e.g.*, *In re Glob. Energy Horizons*, No. 5:15-MC-80078, 2015 WL 1325758, at \*2 (N.D. Cal. Mar. 24, 2015) ("There is no authority suggesting the English government would be hostile to or otherwise reject discovery obtained through a Section 1782 subpoena.").

**1. Third *Intel* Factor: Circumvention of Restrictions or Policies**

The third *Intel* factor asks a district court to consider "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." 524 U.S. at 264-65. The Kazakovs do not argue that the § 1782 application is an attempt to circumvent *British* proof-gathering restrictions or contravene *British* policies. Instead, they contend that it involves bad-faith conduct that violates *U.S.* policy and circumvents discovery in two *Florida* actions. (*See* Reply at 10-13.)

"[I]f the district court determines that a party's discovery application under section 1782 is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or

irrelevant materials, the court is free to deny the application in toto ...." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 n. 6 (2d Cir. 1995). Among a myriad of accusations, the Kazakovs make two main arguments supporting a finding of bad faith by the Bourlakovas: that (1) they relied on forged and illegally obtained evidence—known as the CT Report—in support of their worldwide freezing order ("WFO") application in the U.K. Proceeding (*see* Mem. at 18-22; Reply at 10-11); and (2) they failed to disclose to this Court "the existence of the two pending Florida proceedings" that "address matters directly related to those at issue in London" (Mem. at 22). The Bourlakovas counter that (1) the disputed veracity of the CT Report, which was disclosed in the initial § 1782 application, does not undermine their need for seeking CHIPS transaction data (*see* Opp'n at 21); and (2) the Florida proceedings "are irrelevant to the Section 1782 application because they do not implicate the [CHIPS] discovery" (*id.* at 22).

**\*4** Importantly, the ground for denying a § 1782 application is not just any bad faith. Rather than deciding whether the Bourlakovas conducted themselves ethically in the U.K. Proceeding, the Court focuses on whether the "*discovery application under section 1782* is made in bad faith [or] for the purpose of harassment." *Euromepa S.A.*, 51 F.3d at 1101 n. 6 (emphasis added). From this perspective, the Kazakovs' accusations about the Bourlakovas' conduct in the U.K. Proceeding "are more indicative of a disputed version of the facts underlying the [U.K.] action, which the Court is not permitted to resolve at this time." *Deposit Ins. Agency v. Leontiev*, No. 17-MC-414, 2018 WL 3536083, at \*11 (S.D.N.Y. July 23, 2018). In their § 1782 application, the Bourlakovas properly disclosed to this Court that "[a]s at [sic] the date of this declaration, the Kazakovs dispute the authenticity of the documents produced by the investigation ...." (ECF No. 3 ¶ 4.) Further, because the discovery here is sought from CHIPS, not the Kazakovs, and because the Bourlakovas have withdrawn their WFO application against the Kazakovs [3] and their reliance on the CT report in the U.K. Proceeding (Opp'n at 6, 20), the Court finds no indication that the § 1782 application was made in bad faith or for the purpose of harassment.

[3]  The Kazakovs also argue that, given the withdrawal of the WFO application against them, "the only possible justification for pursuing this discovery relating to the Kazakovs' assets, accounts and financial transactions is now gone." (Mem. at 8.) However, as discussed above, the § 1782 discovery bears on the Bourlakovas' ability to prove their allegations in the U.K. Proceeding more generally, and is not limited to supporting the WFO application. *See supra* Section III.A.

Moreover, although "[c]ourts have quashed § 1782 subpoenas for misrepresenting related actions involving the same parties," those cases "generally involve applicants who misrepresent or omit pertinent adverse rulings in the underlying litigation from their application." *Deposit Ins. Agency*, 2018 WL 3536083, at \*11; *see, e.g.*, *In re WinNet R CJSC*, No. 16-MC-484, 2017 WL 1373918, at \*8 (S.D.N.Y. Apr. 13, 2017) ("WinNet's request is properly viewed as an attempt to circumvent the rulings in the [underlying case] by gathering evidence on an issue that has already been decided on the merits."). By contrast, the two Florida actions, while involving the same litigants, are only tangentially related to the main U.K. Proceeding and do not implicate most of the CHIPS discovery sought here. [4] Thus, the Bourlakovas' omission of these actions in their § 1782 application does not amount to bad faith. *See In re Klein*, 2022 WL 1567584, at \*9 ("The applicants' failure to fully catalog their various, historical claims ... is a far cry from falsely claiming that discovery will be used in a proceeding that, in truth, has already been fully adjudicated on the merits."). The third *Intel* factor thus weighs in favor of the Bourlakovas.

[4]  The first Florida action, *Bourlakova v. Landau*, No. 2021-025928-CA-01 (Fla. 11th Cir. Ct. Nov. 29, 2021), concerns the ownership of specific real property in Fisher Island, Florida. (*See* Opp'n at 14; Reply at 5.) While the Kazakovs argue that the Bourlakovas "already have sought significant discovery concerning the alleged assets, including bank deposits" in this 2021 Florida action (Reply at 12), the referenced subpoena only requested documents and bank records focused on proving the existence of a partnership between Mr. Bourlakov and Nikolai Kazakov (*see* ECF No. 22-6 at 4-12). The second Florida action, *Bourlakova v. Kazakov*, No. 2023-001158-CA-01 (Fla. 11th Cir. Ct. Jan. 23, 2023), concerns the ownership of Edelweiss Investment Inc., one of the many corporate entities at issue in the U.K. Proceeding. (Opp'n at 15; *see* ECF No. 11-3.) Compared to these two cases, the U.K. Proceeding encompasses a much broader set of disputes for which the CHIPS transaction data may provide relevant evidence.

**2. Fourth *Intel* Factor: Unduly Intrusive or Burdensome**

The Kazakovs also argue that the discovery sought is "unduly intrusive and burdensome" under the fourth *Intel* factor. (Reply at 13.) "[A] district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees*, 793 F.3d at 302. Here, the subpoena requests from CHIPS all transaction data "regarding transfers or settlement payments made by or to or otherwise concerning or referencing" ten individuals, thirty-eight entities, and nearly a hundred accounts in the past seven years. (*See* ECF No. 4-1 at 7-14.) The scope of discovery, while broad, is not unduly so, given that the underlying U.K. Proceeding names thirteen defendants, involves high-net-worth individuals who own numerous companies, and alleges wide-ranging claims of asset misappropriation. (*See* ECF No. 3-1 at 2-12.) Courts in this district have routinely granted similar § 1782 applications. *See*, *e.g.*, *In re Byrne*, No. 23-MC-048, 2023 WL 3203811, at *6 (S.D.N.Y. May 2, 2023) (denying motion to quash a § 1782 subpoena because the request for "wire transfer records from January 1, 2016, to the present ... from 13 financial institutions regarding transactions between 17 entities and individuals" is "not only limited in time, but also in scope"); *In re Moussy Salem*, No. 24-MC-5, 2024 WL 3026670, at *11, 16 (S.D.N.Y. June 17, 2024) (denying motion to quash a § 1782 subpoena for bank records involving at least 84 entities); *compare Ex parte Abdalla*, No. 20-MC-727, 2021 WL 168469, at *1, 6 (S.D.N.Y. Jan. 19, 2021) (denying § 1782 application because the subpoena for CHIPS' transaction records "for 93 persons or entities over a 23-year period" is overbroad), *with Ex parte Abdalla*, No. 20-MC-727, 2023 WL 2911047, *5 (S.D.N.Y. Apr. 12, 2023) (granting the same § 1782 application after it was narrowed to 12 persons and entities over a 9-year period). In addition, the Court takes into account that CHIPS has not "moved to quash or otherwise objected to the subpoenas on the grounds of burdensomeness." *In re Byrne*, 2023 WL 3203811, at *6; *see also In re Costa Pinto*, No. 21-MC-663, 2022 WL 4088012, at *8 (S.D.N.Y. Sept. 6, 2022) ("The financial institutions have not exercised their right under Federal Rule of Civil Procedure 45(d)(2)(B) to object to the subpoenas .... Accordingly, the Court finds that the burden imposed upon the financial institutions by the subpoenas is not sufficient to warrant vacating [it]."). Thus, the discovery request is not unduly intrusive or burdensome.

**\*5** Because all four *Intel* factors weigh in favor of granting discovery, the Kazakovs' motion to quash the subpoena is denied.

### C. Reciprocal Discovery

In the alternative to their motion to quash, the Kazakovs ask that "they be permitted to take immediate discovery of the [Bourlakovas] ... to explore the circumstances surrounding the CT Report." (Mem. at 27.) Although "the Second Circuit and the Supreme Court[ ] have suggested that a district court could condition relief under 28 U.S.C. § 1782 upon a reciprocal exchange of information," *Application of Consorcio Minero, S.A. v. Renco Grp., Inc.*, No. 11-MC-354, 2012 WL 1059916, *3 (S.D.N.Y. Mar. 29, 2012) (cleaned up), that generally occurs only where "the subpoena recipient was a party to the underlying litigation," *Deposit Ins. Agency*, 2018 WL 3536083, at *11. CHIPS is not a party to the U.K. Proceeding. And the Kazakovs cite no authority granting reciprocal discovery to intervenors in a § 1782 action. (*See* Mem. at 27; Reply at 13.) Accordingly, the Kazakovs' request for reciprocal discovery is denied.

### IV. Conclusion

For the foregoing reasons, the Kazakovs' motion to intervene is GRANTED. Intervenors' motion to vacate this Court's order and to quash the subpoena is DENIED.

SO ORDERED.

**All Citations**

Slip Copy, 2024 WL 4839047